**BRENTWOOD HOMES, INC., Crabtree Corporation and J. R. Land Company**

v.

**UNITED STATES of America.**

Nos. 1531–1533.

United States District Court
E. D. North Carolina,
Raleigh Division.

April 16, 1965.

Poyner, Geraghty, Hartsfield & Townsend, N. A. Townsend, Jr., Thomas L. Norris, Jr., Raleigh, N. C., for plaintiffs.

Robert H. Cowen, U. S. Atty., Raleigh, N. C., Norman Goldin, Atty., Tax Division, Dept. of Justice, for defendant.

HAYES, District Judge.

These cases involve tax liabilities of multiple corporations under a single control. The Commissioner determined that the three corporations were under single control and pursuant to section 482 of the Internal Revenue Act, allocated the entire income to the first corporation. These suits were brought to recover the taxes paid, alleging the Commissioner had abused his discretion by acting arbitrarily, capriciously and unreasonably in making the determination.

The court reserved its ruling on the defendant's motion for a directed verdict in its favor under Rule 50(b) of the Federal Rules of Civil Procedure. Issues were submitted and answered in favor of the plaintiffs. The defendant has moved now for a judgment notwithstanding the verdict or in the alternative for a new trial.

There are certain undisputed facts which give a background to the problem. There is no conflict in the evidence that before March 19, 1959, J. R. Adams purchased lots in the Brentwood Section of Raleigh where he established a successful business in erecting residences and selling them. His reputation for quality homes and fair dealings was excellent. His lawyer and accountant suggested that he consider converting to a corporate operation. Mr. Adams made the decision to employ multiple corporate operations in which he and his wife would own all of the capital stock; he would be President and his wife Secretary; both would be directors and he would be in charge of all of the dealings. He was informed and appreciated the fact that a corporation was taxed 30% on its first $25,000 taxable income and 52% above this figure.

March 18, 1959, Brentwood Homes, Inc. was created; Adams quit his proprietory business and channelled his transactions through Brentwood Homes, Inc. On June 18, 1959, Crabtree Corporation took over. Brentwood which was created March 18, 1959, adopted May 31, 1959 as its fiscal year. Its taxable income was $24,094.94. Its work and operations were resumed under the Crabtree Corporation.

On August 26, 1959, J. R. Land Company was created. Thereafter it took over the operations. Crabtree's taxable income at the close of its fiscal year January 1, 1960, was $24,293.10. J. R. Land Company adopted June 30, 1960 for its

fiscal year at which time its taxable income was $22,719.79. Brentwood Homes, Inc. for its taxable year June 1, 1959 to May 31, 1960 reported its taxable income at $23,783.29.

During the periods involved here, J. R. Adams was paid a salary of $25,000.00 as President of Brentwood, $6,000.00 as President of Crabtree and $5,000 as President of J. R. Land Company. Adams testified he selected the fiscal years of these corporations to take advantage of the surtax. He also said he conducted all of the dealings for the companies.

He had options on lots and directed which corporations should exercise options on any particular lot. Some lots he deeded to Brentwood and Brentwood to Crabtree without profit. The whole evidence shows the three corporations were under the control of J. R. Adams who at all times was President of Brentwood.

The question is presented whether there was any substantial evidence to carry the issues to the jury on whether the Commissioner acted arbitrarily, capriciously and unreasonably in determining that the income of Crabtree and J. R. Land Company was taxable to Brentwood. I am of the opinion that the evidence was not sufficient and that the motion should have been granted; that a judgment in favor of the defendant should be entered and in the alternative a new trial should be granted.

The plaintiffs contend that there was evidence tending to show (1) the need for more efficient method for cost control of building costs; (2) the ability to present simple and clear financial statements to creditors and banks; (3) desire to limit liability and (4) desire to have a flexible organization structure. But the evidence in these particulars was conjectural and fanciful with no substantial evidence to support it.

The method of operation followed a clear pattern. When a home was to be constructed on a particular lot, a construction loan was procured from First Citizens Bank where the loans were on lots and not on corporate structure, the number of corporations had nothing to do with that bank's policy. It was the bank in which J. R. Adams, Brentwood, Crabtree and J. R. Land Company negotiated loans and made deposits.

There was no evidence to show any change was made in the cost control of building costs; the desire to limit Adams' personal liability was accomplished completely by the creation of Brentwood Homes, Inc. After its creation, the only justification for creating Crabtree and J. R. Land Company was to divert the business of Brentwood Homes, Inc. into Crabtree and J. R. Land Company and to divert it at such times, and in such a manner, as to hold the taxable income of each corporation below $25,000.00. The evidence shows conclusively that there was no dealing at arm's length between the corporations. Each flourished because Adams generated the power to produce success. His services were employed by Brentwood as President at $25,000.00 per year. He diverted the business from Brentwood to the others to save taxes. Neither Crabtree nor J. R. Land Commpany produced any income that could not have been produced by Brentwood. Since Brentwood's president diverted its earnings into Crabtree and J. R. Land Company, the Commissioner would have been derelict in his duty had he failed to allocate the income of those two corporations to Brentwood. The revenue producing facility was one and the same; all building houses in one development in Raleigh; when one was acting the others became inactive and each one's activity was arrested in time to avoid reaching income which could be taxed 52%. The determining factor was the president of Brentwood.

Among the many cases dealing with multiple corporations, I have not found one comparable to this in seeking to escape taxes by one man control and diverting income from the real producers into a fictitious corporation. Even the cases relied on by plaintiffs such as Bush Hog Manufacturing Co., Inc., 42 T.C. 713 (1964) and Alcorn Wholesale Co., 16 T. C. 75 are factually different in substan-

tial respects. In the instant cases the evidence conclusively shows a more flagrant attempt at evasion than that found in such cases as Hamburgers York Road, v. Commissioner, 41 T.C. 821 (1964); Aldon Homes, Inc., v. Commissioner, 33 T. C. 582; Shaw Construction Co. v. Commissioner, 35 T.C. 1102, affirmed 323 F. 2d 316 (9 C.A.); Advance Machinery Exch. v. Commissioner, 196 F.2d 1006 (C.A.2d); Ballentine Motor Co. v. Commissioner, 39 T.C. 348, affirmed 321 F.2d 796 (4 C.A.).

If it is ultimately determined that the income reported by Crabtree and J. R. Land Company is taxable to Brentwood, the defendant concedes that Crabtree and J. R. Land Company will be entitled to refunds. If the Court of Appeals holds the case presented a jury question, then the court in its discretion sets the verdict aside and orders a new trial as the verdict is against the great weight of the evidence and the jury failed to give reasonable consideration to the instructions of the court.