427 F.2d 1361
 Estelle MORRIS TRUSTS, NOS. 401-410, Nathan Schwartz, Trustee, Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellant (two cases).
B. R. MORRIS TRUSTS, NOS. 401-410, Nathan Schwartz, Trustee, Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellant (two cases).
 Nos. 24097-24100.
 United States Court of Appeals, Ninth Circuit.
 June 16, 1970.
 
 Kenneth L. Gross (argued), Tax Division, Johnnie M. Walters, Asst. Atty. Gen., K. Martin Worthy, Chief Counsel, Lee A. Jackson, William A. Friedlander, Elmer J. Kelsey, Dept. of Justice, Washington, D. C., for appellant.
 Alan N. Halkett (argued), William R. Nicholas, Latham & Watkins, Los Angeles, Cal., for appellees.
 Before MERRILL and HUFSTEDLER, Circuit Judges, and BYRNE,* District Judge.
 PER CURIAM:
 
 
 1
 We adopt the views of the majority of the Tax Court and for the reasons stated in that opinion we affirm the judgments from which these consolidated appeals are taken. The opinion of the Tax Court is reported at 51 T.C. No. 20.
 
 
 2
 The decisions of the Tax Court are affirmed.
 
 
 
 Notes:
 
 
 *
 Hon. Wm. M. Byrne, Senior Judge, United States District Court, Central District of California, sitting by designation
 
 
 BYRNE, District Judge:
 
 3
 I respectfully dissent.
 
 
 4
 I agree with the dissenting Tax Court judges that "in truth and substance (there was) but one trust, or at most two trusts (one for each of the two primary beneficiaries)" and that "the present case involves nothing more than pure sham" because "there was no relevant purpose other than tax avoidance for fragmenting what was essentially a single trust into a number of artificial units".
 
 
 5
 The record shows that the Tax Court found that although (1) the trusts were created primarily for tax avoidance purposes, and (2) that these purposes continue to "taint" the trusts' income, the several trusts should be accorded independent significance as taxable entities and not consolidated for purpose of federal income taxation.
 
 
 6
 These consolidated appeals were generated by a dispute between the Government and taxpayers over a clever scheme to reduce income taxes otherwise due on profits from real estate development.
 
 
 7
 In early 1953, B. R. Morris, a primary beneficiary, and his partner, a Mr. Zuckerman, operated a housing tract construction company. They associated with two other developers, Lee and Hayden, to acquire a large section of land (known as "Johnson Ranch") with the intent that the property be subdivided for residential and shopping center purposes.
 
 
 8
 In September, 1953, B. R.'s parents executed ten separate documents, each designated "Declaration of Trust" and naming B. R. and his wife as the primary beneficiaries. At the same time the parents of the other partners created at least 50 similar trusts. Shortly thereafter, about 200 acres of the Johnson Ranch were transferred to these trusts in four equal shares.
 
 
 9
 After the Morris trusts sold their interests in Johnson Ranch at substantial profits, the Commissioner filed a deficiency notice claiming that the twenty trusts should be consolidated into two trusts. This claim was based on the well established principle that formal entities will be disregarded if the sole purpose for their creation and for which they are used is tax-avoidance. Knetsch v. United States, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960); Gilbert v. Comm. of Internal Revenue, 248 F.2d 399 (2 Cir. 1957) [Hand, J., dissent] Shaw Construction Co. v. C.I.R., 323 F.2d 316 (C.A.9, 1963); Gregory v. Helvering, 69 F.2d 809 (C.A.2, 1934), aff'd 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935); Brentwood Homes v. United States, 240 F.Supp. 378 (E.D.N.C. 1965), aff'd sub nom. J. R. Land Co. v. United States, 361 F.2d 607 (C.A.4, 1966).
 
 
 10
 Nevertheless, in the face of settled law on tax-avoidance, the Tax Court majority refused to disregard the Morris trusts as separate taxable entities and the majority of this panel places its stamp of approval on the decision.
 
 
 11
 Two reasons were set forth: (1) since the Internal Revenue Code sanctions income splitting to some degree by recognizing even one trust for tax purposes, the establishment of multiple trusts is only a quantitative extension of single-trust advantage and is not "qualitatively distinct"; and (2) Congressional inaction requires judicial inaction in an "area so fraught with its own particular problems and nuances".
 
 
 12
 As to the first, the majorities on both this court and the Tax Court want to believe that because B. R. Morris could have obtained some slight tax advantage by the creation of a single trust, he was justified in taking a real bite of the apple by indulging himself with 20 trusts that had no purpose other than tax avoidance. In effect, the court today departs from clear principle that substance, not form, controls the incidence of income taxation. Schulz v. C. I. R., 294 F.2d 52 (C.A.9, 1961); Wolf v. C. I. R., 357 F.2d 483 (C.A.9, 1966); Shaw Construction v. C. I. R., supra.
 
 
 13
 Secondly, the Tax Court's emphasis on the long legislative history of rejected attempts to close the multiple-trusts loophole reaches the wrong conclusion. A history of Congressional rebuffs to reform does not imply that Congress gave any sanction to tax-avoidance through multiple trusts, tacitly or covertly.[1] Furthermore, federal courts have not been deterred from realistic interpretations of taxpayer entities to prevent tax avoidance, even though Congress had not yet acted to check abuses. United States v. Grace's Estate, 396 U.S. 881, 90 S.Ct. 147, 24 L.Ed.2d 141 (1969); Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406 (1938). In this regard, I agree with the Tax Court dissent that the "maintenance of 10 sets of records (not 20) was but a meaningless formality * * * without any substance, in view of the identity of grantors, trustee, and beneficiaries".
 
 
 14
 At the heart of the Tax Court opinion lies a seeming inability or unwillingness to remedy the abuses present in this case. The Tax Court majority states that it is "wary of broadscale incorporation of the doctrine of `tax avoidance' or `business purpose', or `sham'" into the multiple trusts area. Aside from the fact that subsequent to the Tax Court decision a workable remedy was devised,[2] I submit that the Tax Court should have tested each of the Morris trusts with the question of whether there were any non-tax reasons justifying the use of multiple trusts rather than one. See Comment, 24 Univ. of Chicago L.Rev. 166.
 
 
 15
 With this standard the Tax Court could have disregarded formalities and consolidated the trusts into one or, at most, two trusts. The Tax Court majority attempted to distinguish the present case with Sence v. United States, 184 Ct.Cl. 67, 394 F.2d 842 (1968) on the grounds that the Sence multiple trusts were, in fact, administered as one trust.
 
 
 16
 In Sence the tax-avoidance issue present in the instant case was expressly reserved by the Court of Claims which found that Sence failed to affirmatively prove that he "created and maintained truly separate trusts". Although, in contrast to Sence, the Morris trusts did maintain the formal trust functions, the Tax Court should have and could have reached this Sence conclusion:
 
 
 17
 "* * * for income tax purposes, all these substantially identical trusts created, as part of an arrangement, primarily for the benefit of the same beneficiary should be treated as consolidated into one and the tax computed on the basis of their consolidated incomes * * *." (394 F.2d at 852)
 
 
 18
 It must be kept in mind that this was not the usual situation where a person creates a trust to dispose of his property or to have his investments handled by a trustee with specialized training. Here B. R. Morris on the eve of selling property and being confronted with the liability for substantial taxes on large profits, conceived the clever idea of splitting the profits into 20 segments, one for each of 20 trusts of which he and his wife were the real settlors and also the primary beneficiaries. There is absolutely no more basis for the taxpayer being permitted to avoid taxes by use of this scheme than there would be if he divided the profits into 20 segments and deposited one in each of 20 banks.
 
 
 19
 Seldom has the principle that substance, not form, should prevail, been treated in such a trite manner. Indeed, there is little wonder why the dissenting judges of the Tax Court labeled this tax scheme as "pure sham".
 
 
 20
 I would reverse.
 
 
 
 Notes:
 
 
 [1]
 In its opinion that Tax Court did state "We do not intend to imply that we believe Congressional inaction here meanscomplete sanction of tax avoidance through multiple accumulation trusts". (Emphasis supplied.)
 
 
 [2]
 In the 1969 Tax Reform Act Congress established an unlimited throwback rule to restrict Tax savings available through multiple accumulative trusts. 1969 U.S. Code Cong. & Ad.News, p. 131. The fact that taxpayers cannotnow get the advantages secured by the Morris trusts is irrelevant to the issues in this case.