**J. R. LAND COMPANY, Appellant,**

**v.**

**UNITED STATES of America,
Appellee.**

**CRABTREE CORPORATION, Appellant,**

**v.**

**UNITED STATES of America,
Appellee.**

**BRENTWOOD HOMES, INC., Appellant,**

**v.**

**UNITED STATES of America,
Appellee.**

**Nos. 10194–10196.**

United States Court of Appeals
Fourth Circuit.

Argued Feb. 9, 1966.

Decided May 3, 1966.

N. A. Townsend, Jr., Raleigh, N. C. (Thomas L. Norris, Jr., and Poyner, Geraghty, Hartsfield & Townsend, Raleigh, N. C., on brief), for appellants.

Richard J. Heiman, Atty., Dept. of Justice (Richard M. Roberts, Acting Asst. Atty. Gen., Meyer Rothwacks, Atty., Dept. of Justice, and Robert H. Cowen, U. S. Atty., on brief), for appellee.

Before BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge:

These cases involve the tax liability of multiple corporations under single control. The Commissioner determined that the three corporations were under single control, and pursuant to section 482 of the Internal Revenue Act, 26 U.S.C.A. § 482, allocated the entire income to the first corporation formed. These suits were brought to recover the taxes paid on the grounds that the Commission-

er had abused his discretion in making the allocation.

At the conclusion of the evidence the court reserved its ruling on the defendant's motion for a directed verdict. The issues were submitted to the jury and answered in favor of the taxpayer. Judgment notwithstanding the verdict was granted for the government. We believe the judgment to have been proper.

There is no question here as to the control of the several corporations involved. The sole factual question is whether the principal purpose of John R. Adams in creating the additional corporations was avoidance of federal income tax by securing the benefit of additional surtax exemptions.

For a number of years Mr. Adams had operated a house building business as a sole proprietorship. In 1959 he decided to switch his interests to a corporate form. On March 18, 1959, Brentwood Homes, Incorporated, was formed. On June 18, 1959, Crabtree Corporation was formed, and thereafter took over the operations of Brentwood. On August 26, 1959, J. R. Land Company was formed, and thereafter took over the operations of Crabtree. Each corporation was only nominally capitalized.

For their first year of operation each corporation chose an appropriate short taxable year so that its income would not exceed $25,000.00. Their incomes were $24,094, $24,253 and $21,356, respectively. After these short years the corporations were used in rotation so that no taxable income over $25,000 would be reported. When one corporation was active the others were inactive. The method of limiting income was to allocate to each corporation options which were held by Mr. Adams personally on the various building sites within a single tract of land. The scheme was successful. For their first full taxable years the corporations reported $23,787, $17,482 and $25,058 respectively. Brentwood's second full year income was $24,059. Mr. Adams testified that during this period, although he performed the same functions for all three corporations,

Brentwood paid him $25,000 while Crabtree paid only $6,000 and J. R. Land only $5,000.

In view of the very successful allocation of income flow among the three corporations some compelling reason must be presented for forming more than one corporation in order to present a question for the jury. The taxpayer presents four justifications: (1) elimination of cost control problems; (2) simpler presentation of financial data to prospective lenders; (3) limitation of personal and corporate liability; and (4) more flexible structure in the event that part of the business should have to be sold. None of these reasons is persuasive. The contention that cost control requires bookkeeping for small groups of houses and that "such separateness could most readily be assured by forming separate corporations" needs little discussion. Separate corporations are not necessary to keep separate accounts. This is especially true where, as here, only one person kept all of the corporate accounts and no two of the corporations functioned contemporaneously.

The need for clearer presentation of financial statements is also not relevant since the financing was in all cases obtained on the security of individual pieces of land, not corporate worth. Further in insuring the projects each house had a separate builders risk policy. In selling the houses no reference was made to potential buyers of the separate corporate status, in fact this was hidden from them by advertising all houses as "Adams Built."

The limitation of personal liability would have as well been secured by a single corporation as by the three. There would be some reduction of the corporate liability, however.

Though the organizational structure would be more flexible it is difficult to see the worth of this. Only one corporation was functioning at a time. The sale value of a non-functioning corporation, a corporate shell, is not great. As noted before, the principal asset of the corpora-

tions was the goodwill of an "Adams Built" home.

This case is strikingly similar to the cases of James Realty Co. v. United States, 280 F.2d 394 (8 Cir.1960), and Henry S. Alper, ¶ 62,038, P-H Memo TC. In the *James* case the district court finding which the Court of Appeals approved stated:

> "Whether the land transferred came from Fine himself, or from one of his corporations, the tax avoidance purpose seems clear. The potential income of Adolph Fine, Inc., and Fine Realty, Inc., were siphoned off to James Realty Co. and the evidence shows that the income from ownership of developmental property was arbitrarily fragmentized into corporate units conveniently accruing just under $25,000 per year. Adolph Fine thus obtained the benefit of an extra set of surtax exemptions and excess profits credits that he would not otherwise have enjoyed and to which he was not entitled." Supra, 280 F.2d at 399.

In the *Alper* case the Tax Court found:

> "The profit reported in the returns of each corporation was directly controlled by the allocation of building sites to the corporation. The number of corporations to be assigned lots in a subdivision was based on the estimated profits of the entire operation. The all-important figure to Alper and his associates was $25,000. So long as the net income of each corporation in any one year was kept below $25,000, the surtax and excess profits tax was to be avoided. Alper distributed the sites among the number of corporations required to keep the income reported on the returns of each corporation below $25,000, and if there were not enough existing corporations to which the lots could be transferred so that each corporation had net income of less than $25,000, additional corporations were created and their capital stock acquired and the lots assigned accordingly. * * *
>
> "As soon as the profits reportable by one of the corporations reached the $25,000 limit of the surtax and minimum excess profits tax credit, that corporation became inactive for the remainder of the taxable period, and it was used again only if another surtax exemption or minimum excess profits credit was required in the following period." At 62–237.

█ The courts in both of these cases rejected similar justifications for the multiple corporation operation as presented here. *James,* supra, 280 F.2d at 397; *Alper,* supra at 62–239. Since no substantial evidence was presented contrary to the Commissioner's determination that the principal purpose of the several corporations was tax avoidance the district judge was correct in granting judgment notwithstanding the jury verdict.

Taxpayer further questions whether even on these facts the Commissioner had authority under section 482 to allocate all of the income and expenses of Crabtree Corporation and J. R. Land Company to Brentwood Homes, Inc. The government contends that the allocation was proper under § 482 alone, or in the alternative under §§ 269 and 482. We believe that in enacting these particular provisions the Congress intended to prevent the very abuses found in this case. A 1951 Senate report on proposed amendments to the corporate surtax exemption provisions stated:

> "It is not intended, however, that the exemption of the first $25,000 of a corporation's surtax net income from the surtax shall be abused by the splitting up, directly or indirectly, of a business enterprise into two or more corporations or the forming of two or more corporations to carry on an integrated business enterprise. It is believed that sections 45 [now 482] and 129 [now 269] will prevent this form of tax avoidance." S.Rep. No. 2375, 81st Cong., 2d Sess. 70, U.S.Code Congressional Service 1950, p. 3125.

The taxpayer, however, argues that § 482 may not be used to transfer the total income and expenses of one corporation

to another. He relies on Regulation § 1.482–1(b) (3) which states that § 482 is not intended to produce a "result equivalent to a computation of consolidated taxable income. \* \* \*" This reasoning cannot be accepted. As was stated by the Second Circuit in Advance Machinery Exch. v. Commissioner of Internal Revenue, 196 F.2d 1006 (1952):

"\* \* \* the unsoundness of that [argument] of the petitioner is illustrated by the fact that it would exclude from the 'policing' provisions of § 45 [now § 482] the most flagrant evasion by arbitrary shifting of income. It would let the Commissioner reallocate the income of these separate entities, to reflect the income of each correctly, if the amount involved, however great, did not equal their total combined income but he could not apply § 45 at all if the taxpayers succeeded in constructing a situation where, in order to prevent tax evasion or properly to reflect income, it were necessary to attribute all of the income of the separate entities to one of them, as was done here. Thus tax evasion could be so complete as to make itself invulnerable, a proposition whose statement discloses its fallacy." Ibid. at 1009.

It was proper that the income be attributed to Brentwood Homes, Inc. There is no question that Adams was entitled to operate his business in a corporate form. Brentwood was the first corporation organized. Business was subsequently siphoned off from it. Further, Adams, the connecting link in the entire operation, was principally employed by Brentwood. Brentwood paid him salary more than twice the combined salaries paid to him by the other two corporations.

Since we affirm the granting of judgment notwithstanding the verdict, we need not consider whether the district court abused its discretion in conditionally granting a new trial.

The decision of the district court is

Affirmed.