**HOUSE BEAUTIFUL HOMES, INC., Highland Homes, Inc., Spears Realty Company, Inc., Spears Development Company, Inc., X-Cel Contracting Company, Inc., Johnson County Development Company, Inc., Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 9773.**

United States Court of Appeals
Tenth Circuit.

Dec. 19, 1968.

Byrne A. Bowman and Thomas F. Mc-Intyre, Oklahoma City, Okl. (Mervin E. Templin, Oklahoma City, Okl., on the brief), for petitioners.

Elmer J. Kelsey, Atty., Dept. of Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson and David O. Walter, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before MURRAH, Chief Judge, and BRIETENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

This is a petition for review of a decision of the Tax Court upholding a determination by the Commissioner of Internal Revenue denying the $25,000 surtax exemption [1] to each of six related corporations engaged in the home building industry. Applying the provisions of section 269 of the Internal Revenue Code of 1954 [2] the Commissioner determined that the petitioners were incorporated for the principal purpose of evasion or avoidance of federal income tax through the securing of the benefit of multiple surtax exemptions. The denial of the surtax ex-

---

1. Section 11(c) of the Internal Revenue Code, 26 U.S.C. § 11(c) (1964).

2. 26 U.S.C. § 269 (1964).

emptions resulted in a deficiency in the total amount of $62,983.23 for the years 1958, 1959 and 1960.

The six corporate petitioners, House Beautiful Homes, Inc., Highland Homes, Inc., Spears Realty Company, Inc., Spears Development Company, Inc., X-Cel Contracting Company, Inc., and Johnson County Development Company, Inc., were all formed by their principal shareholder, Julius Spears,[3] and together with six other related corporations constitute the total of twelve corporations that he utilized to engage in the development of land and the construction and sale of residences thereon. Of the six remaining corporations, one of them, Spears Painting and Decorating, Inc., was present in the Tax Court but having prevailed there is not before us on this appeal.[4] Four of the remaining six corporations, Spears Construction Co., Inc., Quality Spears Contractors, Inc., Beverly Hills Development Co., Inc., and Jay Dee Realty Sales Co., Inc., have chosen to pay the deficiency assessment and prosecute suits for refund in the federal district court which has yet to render a decision. The sixth and last of the remaining related corporations, Spears Building Co., Inc., was the first to be formed by Julius Spears and not having been assessed a deficiency is not embroiled in this or any other similar tax litigation.

Although we are concerned solely with the six corporations instituting this appeal, we shall consider, as did the Tax Court, the evidence relating to all twelve of the related corporations. This is necessary in order to properly reflect the correct relationship of each corporation in the overall scheme of Julius Spears' organization. It is only in this context that the principal motivation giving rise to each corporate birth can be ascertained.

The facts are without dispute and indicate that after a few years of successful experience in small scale home construction conducted in an individual capacity, Julius Spears acquired partially developed land in Overland Park, Kansas, and subsequently completed the necessary improvements, e. g., installation of sewer lines, streets, etc. This property was known as Maple Crest No. 2.

On October 9, 1951, Julius Spears formed Spears Building Co., Inc., to which he contributed an initial capital investment of $10,000 receiving in return all the common stock of the corporation except qualifying shares. He then transferred several lots in Maple Crest No. 2 to that corporation which then completed a few remaining development details, built houses and sold them.

After purchasing Maple Crest No. 2, Julius Spears purchased Edlunds Resurvey, a 5-acre tract of land located a few blocks from Maple Crest No. 2. He then formed two corporations, Spears Construction and petitioner, Spears Development, and transferred certain lots in Edlunds Resurvey to Spears Development which in turn transferred some of the lots, subject to developmental completion, to Spears Construction. The latter built houses on the improved lots and sold them to various customers. Petitioner, Spears Development, had no employees other than its president, Julius Spears, and had no capital investment in equipment of any kind choosing instead to subcontract all development work to others. Spears Construction used some of the employees of Spears Building to perform its primary function of the construction of houses although it had no employees other

---

3. Julius Spears received the following percentages of the shares of the common stock of the six corporate petitioners: Spears Realty—100% (less qualifying shares); Spears Development—100% (less qualifying shares); Highland Homes—79%; House Beautiful—77%; Johnson County Development—78%; and X-Cel Contracting—70%.

4. The Tax Court found that this corporation was formed primarily to improve the quality of the painting and decorating of "Spears Built Homes" in that it allowed Julius Spears to control the material and workmanship relating thereto. The corporation engaged in no activity other than painting and decorating during the years here pertinent.

than those who were or had been employees of Spears Building. As will be indicated below, in 1955 Spears Construction began to develop land as well as construct houses.

In 1953 the fourth corporation, petitioner Spears Realty, was formed to sell the houses constructed by Spears Building and Spears Construction. Hence, this petitioner was engaged in performing the sales function—previously handled primarily by Spears himself—for Spears enterprises until in 1955, like Spears Construction, it too joined in the land development business. In 1954 two more corporations, Quality Spears Contractors [5] and Spears Painting and Decorating, were organized. These were complemented in 1955 by the formation of Highland Homes, House Beautiful, Jay Dee Realty, Johnson County Development and X-Cel Contracting. The twelfth and last corporation, Beverly Hills Development, was incorporated on January 10, 1956. Each of these corporations received all their somewhat meager equity investment through cash contributed by Julius Spears who was a director and president as well as the principal shareholder of each corporation.

On February 24, 1955, Julius Spears purchased a 170-acre tract of land in Johnson County, Kansas, known as the Beverly Hills Addition. Shortly thereafter, another larger tract, Rancho Santa Fe, was acquired in Johnson County. This property was located 25 blocks from Beverly Hills and 18 blocks from Maple Crest No. 2. The Rancho Santa Fe and Beverly Hills properties constituted the bulk of the lands which were to be the subject of various transactions among the

petitioners and between the petitioners and other of the related corporations.[6]

In 1956, Highland Homes acquired 37 lots in the Beverly Hills Addition from Beverly Hills Development which had earlier purchased the land from Julius Spears ostensibly to develop the land for the later construction of homesites. After purchasing the aforementioned 37 lots, Highland Homes employed architects to prepare design plans, applied for and obtained Veterans Administration and Federal Housing Authority loans and contracted with X-Cel Contracting to construct houses on the lots. Also in 1956, House Beautiful acquired 21 lots in the Beverly Hills Addition from Spears Development and 22 different Beverly Hills lots from Spears Construction. House Beautiful obtained loan commitments and contracted with X-Cel Contracting to construct the houses.

On March 7, 1958, Quality Spears purchased 29 lots in Rancho Santa Fe from Beverly Hills Development. The latter agreed to complete the land development by installing paving, sewer lines and water mains. Many other similar transactions transpired during the ensuing years. These specific dealings [7] adequately illustrate the complete intermeshing of the assorted developmental projects undertaken by the petitioners under the direction of Julius Spears.

The manipulation of projects and corporations seems to have been successful in several ways not the least of which was the maintenance of each corporation's net income below the $25,000 level. Of the total of 78 corporate tax years experienced by the twelve corporations, in only 21 tax years did the net income of any

---

5. Quality Spears was apparently originally incorporated to engage in the ownership and operation of radio and television stations in Missouri. In 1957, after nearly four years of unsuccessful operation, its purpose was changed to allow it to engage in developing land, constructing homes and the like.

6. The Tax Court examined in detail all of the many interrelated development, construction and sales dealings among

the various corporations. A few of these transactions will be delineated here but there will be no attempt to render an exhaustive statement of the many complex transactions.

7. The various transactions are set forth in tabular form in the memorandum decision of the Tax Court and will not be reproduced here. See, House Beautiful Homes, Inc., et al., 36 P–H Tax Ct.Mem. ¶ 67,051 at pp. 286–87 (1967).

corporation exceed $25,000 and in 5 of those 21 years the taxable income was less than $26,000 and greater than $30,000 in only nine tax years. Of the 57 tax years in which the taxable income was less than $25,000, it exceeded $24,000 in 10 years and $20,000 in 16 tax years. Thus, an analysis of the reported taxable income figures for the corporations controlled by Julius Spears demonstrates the remarkable consistency with which taxable income approximated $25,000 for each of the corporations involved.

The Tax Court, having considered all of the transactions among the various corporations, concluded that the principal purpose for the formation of each of the petitioners was the acquisition of additional surtax exemptions. The Commissioner's deficiency assessments were thus upheld as being clearly justified by the evidence.[8] Accordingly, the issue presented for our consideration is one of deciding whether the Tax Court correctly determined that Julius Spears' principal purpose in organizing the various corporate petitioners was to obtain the benefit of a deduction or credit that would not otherwise have been enjoyed.[9]

■■■ The determination by the Tax Court that the corporations were organized principally to obtain multiple surtax exemptions is a finding of fact [10] which is conclusive on this appeal if supported by substantial evidence and not clearly erroneous.[11] In addition, it is conceded that the Commissioner's assessment is presumed to be correct, i. e., the burden of showing an absence of the prohibited principal purpose is upon the taxpayer.[12] As a result, we have not found it necessary to set forth an exhaustive delineation of all of the facts nor to belabor our reasons for upholding the Tax Court's decision.

It is asserted here, as it was in the Tax Court, that the primary reasons for forming the separate corporate petitioners were: to separate the land development, design and finance, construction and sales functions of the home building industry; to limit the exposure of capital at risk by creating a separate corporation for each project; and to provide a means for employees and family members to purchase stock.

Little need be said in disposing of the last of the three supposed reasons for multiple corporations. The modicum of diversification of stock ownership undertaken here [13] can hardly be cognizable as a sufficient business or other non-tax purpose so as to overcome the clear implication arising from the activities of the corporations as indicated above.

Petitioners rely upon Bush Hog Manufacturing Co., Inc., 42 T.C. 713 (1964), to support the proposition that a separation

---

8. Because of the distribution of one surtax exemption between Spears Building and Spears Construction, and the additional granting of a surtax exemption to Spears Painting & Decorating, no contention has been made that the Commissioner has exceeded the authority granted to him by I.R.C. § 269(b) by not allowing at least one surtax exemption to the related corporations.

9. There is no question that the other prerequisites for invoking I.R.C. § 269 were present.

10. J. T. Slocomb Co. v. Commissioner of Internal Revenue, 334 F.2d 269 (2d Cir. 1964); James Realty Co. v. United States, 280 F.2d 394 (8th Cir. 1960); and Kessmar Const. Co. v. Commissioner

of Internal Revenue, 336 F.2d 865 (9th Cir. 1964).

11. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); Knuckles v. Commissioner of Internal Revenue, 349 F.2d 610 (10th Cir. 1965); Anson v. Commissioner of Internal Revenue, 328 F.2d 703 (10th Cir. 1964); and Wells-Lee v. Commissioner of Internal Revenue, 360 F.2d 665 (8th Cir. 1966).

12. E. g., United States v. Intermountain Furn. Mfg. Co., 363 F.2d 554 (10th Cir. 1966); and Decker v. Korth, 219 F.2d 732 (10th Cir. 1955).

13. An exact designation of the distribution of stock to employees and family

into functional units is a proper controlling business purpose. Yet the essence of the holding in Bush Hog is that each corporation must be engaged in a different business activity and must function somewhat independently. The facts presented here refute this separation argument. There was ample evidence to indicate that Julius Spears transferred raw land to each of his corporations on a more or less indiscriminate basis. The recipient corporation would then sell the land to another corporation after performing certain developmental work or subject to the later completion of such work. The transferee corporation would then construct houses or merely arrange financing and sub-contract the construction to yet another of the corporations. In the very same tract of raw land, perhaps in contiguous lots, a different controlled corporation would receive other raw land and then either construct houses or arrange financing before transferring the land to another corporation, oftentimes to a corporation that had previously received adjacent raw land. The end result was that Highland Homes, House Beautiful, Johnson County Development, Spears Development, Spears Realty and X-Cel Contracting [14] were all engaged in developing homesites in the same tract at the same time and performing substantially the same functions.[15] Obviously there was no clear separation of functions such as to require the conclusion that the Tax Court finding was clearly erroneous.

It is contended that we are precluded from viewing the post-incorporation activities of the petitioners because the purpose at the time of the formation of the corporations is controlling. This argument ignores the fact that it is only through an analysis of conduct that motivation can be inferred. Whether the conduct occurs immediately subsequent to corporate organization or some time thereafter, it sheds light upon the original intention of the controlling shareholder. Such an approach has been universally applied to problems of this type [16] because it is recognized that any attempt to discover the underlying purpose motivating any particular act must necessarily draw upon circumstantial evidence or be forced to take the actor at his word—a wholly undesirable alternative. This necessity for drawing inferences explains the superficially inconsistent decisions rendered in this and other areas in which subjective intention is sought to be deduced from objective conduct.[17]

---

members will not be set forth. From the percentages of Julius Spears' stock ownership indicated in note 3 supra, it is apparent that the equity investment of others was limited.

14. Initially X-Cel Contracting did engage primarily in the construction of houses upon lots developed by other corporations. However, it too became entwined in the Beverly Hills and Rancho Santa Fe manipulations. It must be remembered that our inquiry seeks to ascertain motivation. The fact that one or more corporations may have performed somewhat different functions is significant only as it relates to motivation and may be overborne by the inference arising from the totality of corporate activities. Further, X-Cel Contracting, Spears Building and Spears Construction each performed construction work at one time or another. As we indicated previously, all twelve corporations will be considered in discovering the principal purpose for the formation of the six corporate petitioners.

15. See the table of transactions, supra note 7. That the twelve corporations were in reality engaged principally as integral parts of a single organization is further illustrated by the fact that during the years 1958 through 1960, one of the corporations, Spears Building, received management service fees from all the remaining corporations. These service fees were paid in consideration for Julius Spears' "advisory" activities.

16. E. g., James Realty Co. v. United States, 280 F.2d 394 (8th Cir. 1960); and Kessmar Const. Co. v. Commissioner of Internal Revenue, 336 F.2d 865 (9th Cir. 1964).

17. Cf. Larrabee v. United States, CCH 1968 Stand.Fed.Tax Rep. (68-2 USTC) ¶ 9442 (D.C.Cal. May 27, 1968) ; Kessmar Const.

The creation of separate corporations did accomplish a limitation of the capital at risk with regard to any particular project undertaken by that separate corporate entity. However, this argument could be advanced to justify any situation involving the creation of multiple corporations. In the absence of the demonstration of an overwhelming need for such risk minimization this contention is not sufficiently persuasive to overcome the substantial evidence indicating that the chief motivation [18] was other than to limit financial risk.[19]

In sum, the evidence before the Tax Court indicated that Julius Spears was keenly aware of the tax advantages of a multiple corporation organization and that this awareness resulted from his association with the accountant for the corporations and from his participation in the local Home Builders Association. With this knowledge of tax consequences, he then began the manipulation of his various corporations which resulted in the transactions described above. We conclude that there was substantial evidence to support the finding of the Tax Court that the principal purpose for the formation of each of the petitioners was to avoid federal income tax by the securing of the benefit of multiple surtax exemptions that would not otherwise have been available.

Affirmed.

Co. v. Commissioner of Internal Revenue, 336 F.2d 865 (9th Cir. 1964).

18. In order for any purpose to be the principal purpose it is not necessary that it be the sole motivation, but rather, it is enough if it is found to exceed all others in importance. Hawaiian Trust Co., Ltd. v. United States, 291 F.2d 761 (9th Cir. 1961). See Mertens, Law of Federal Income Taxation § 38.69, p. 221 (1967).

19. J. R. Land Co. v. United States, 361 F.2d 607 (4th Cir. 1966); and James Realty Co. v. United States, 280 F.2d 394 (8th Cir. 1960). Under the clearly

erroneous rule, in order to reverse the Tax Court it is necessary that this court be left with a definite and firm conviction that a mistake has been made. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Accordingly, a showing that there were also non-tax purposes underlying the formation of the various corporations is not sufficient to demonstrate an absence of evidence to support the Tax Court's finding that tax avoidance was the principal purpose. Bonneville Locks Towing Co. v. United States, 343 F.2d 790 (9th Cir. 1965).