THRIFTY SUPPLY OF SPOKANE, INC., ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent. Thrifty Supply of Spokane, Inc. v. Commissioner
Docket Nos. 6592-73--6598-73.
United States Tax Court
T.C. Memo 1976-63; 1976 Tax Ct. Memo LEXIS 336; 35 T.C.M. (CCH) 276; T.C.M. (RIA) 760063; March 8, 1976, Filed Edward M. Bensussen, for the petitioners. Matthew W. Stanley, Jr., for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge.o: Respondent determined the following deficiencies in petitioners' corporate income taxes: 1968
1969
1970
Thrifty Supply Co. of Spokane, Inc.
$ 6,827.00
$ 7,042.00
$ 6,784.00
Thrifty Supply Co. of Bellevue, Inc.
777.00
4,360.00
Thrifty Supply Co. of Everett, Inc.
6,718.00
6,594.00
6,483.00
Thrifty Supply Co. of Seattle, Inc.
6,741.00
6,845.00
5,454.00
Thrifty Supply Co. of Tacoma, Inc.
6,719.00
3,152.00
Thrifty Supply Co. of Auburn, Inc.
3,618.00
6,969.00
Thrifty Supply Co. of Yakima, Inc.
7,084.00
7,057.00
*337 The only issue for decision is whether petitioners were incorporated for the principal purpose of avoiding income tax by securing the benefit of multiple surtax exemptions, thereby triggering disallowance of such surtax exemptions under section 269. [2]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. Each petitioner had its principal place of business in the location noted below when it filed its petition: Petitioner
Principal Place of Business
Thrifty Supply Co. of Spokane, Inc.
Spokane, Washington
Thrifty Supply Co. of Bellevue, Inc.
Bellevue, Washington
Thrifty Supply Co. of Everett, Inc.
Everett, Washington
Thrifty Supply Co. of Seattle, Inc.
Seattle, Washington
Thrifty Supply Co. of Tacoma, Inc.
Tacoma, Washington
Thrifty Supply Co. of Auburn, Inc.
Auburn, Washington
Thrifty Supply Co. of Yakima, Inc.
Yakima, Washington
Herman H. Gorlick ("Herman") graduated from the University of Washington in 1948 with a B.A. in business administration and a minor in labor relations. After graduation he went into *338 the plumbing contracting business with his older brother, Morris Gorelick ("Morris"). [3]
In 1951 Herman, Morris and Robert Johnson formed a partnership, Thrifty Supply Company, to engage in wholesaling plumbing supplies in King County and southern Snohomish County, Washington. The partnership sold its merchandise in the immediate Seattle area on a cash and carry basis and throughout the rest of the State of Washington by mail. By 1953 at least one salesman had been hired to cover the Seattle area. In 1956 Robert Johnson sold his interest in the partnership to Herman and Morris and opened a competing business in Seattle. The partners of Thrifty Supply Company felt it would not survive if it continued to limit its direct sales to the Seattle area. It sought to tap new markets in an attempt to increase direct sales and improve its overall gross profit margin. As a result, on January 1, 1956 the partnership leased a warehouse and began operations in Everett, Washington, approximately 30 miles north of Seattle. The Seattle salesman became the manager-salesman for the Everett operation and a warehouseman was *339 hired to assist him. In 1957, after exploring market conditions in the Spokane area some 275 miles east of Seattle, the partnership leased a warehouse and began operations there. The Spokane operation employed a manager and a warehouseman. In the spring of 1959 the partnership uncovered a theft ring in Seattle. For three years Seattle employees had been conspiring with customers to steal supplies from the Seattle warehouse. The thieves included an individual who had been sent to Spokane as the warehouseman. The theft loss was estimated at $90,000. In 1959 Thrifty Supply Company was also experiencing some personnel difficulties. It was hard to find qualified workers, and employee turnover was high. The Everett manager had been admitted to a sanitarium with tuberculosis. The Spokane manager failed to submit certain sales invoices to Seattle for accounting and billing purposes and he extended credit under questionable circumstances. Despite these problems, the partners continued to believe that survival depended upon expansion. In June 1959 the partnership purchased Acme Wholesale Plumbing & Heating Supply ("Acme") located in Tacoma, a city about 30 miles south of Seattle. While *340 negotiating a loan with the Peoples National Bank of Washington for the purchase of Acme, Herman was advised by the bank that he should incorporate each location to insulate the various markets from each other. At about the time of the Tacoma purchase, Herman was also advised by Thrifty Supply Company's attorney to incorporate each branch separately. The attorney noted that the partners could not readily control such a dispersed enterprise. For example, he said that one of the branches might incur a liability of which the partners might not be aware. With corporate separation, if one location failed, the other locations would, he pointed out, be protected. On October 1, 1959 Thrifty Supply Co. of Spokane, Inc. ("Thrifty Spokane"), Thrifty Supply Co. of Everett, Inc. ("Thrifty Everett") and Thrifty Supply Co. of Tacoma, Inc. ("Thrifty Tacoma") were each incorporated. In March 1960 a new operation, Thrifty Supply Co. of Yakima, Inc. ("Thrifty Yakima") was incorporated and opened in Yakima, Washington, approximately 140 miles from Seattle. By 1967 competition in the Seattle area had increased tremendously. Other plumbing supply companies had expanded into the markets immediately *341 surrounding Seattle. As competition increased, sales by the partnership in greater Seattle decreased. A decision had to be made whether to expand sales in those surrounding markets or withdraw altogether. In order to maintain its competitive position vis-a-vis other plumbing wholesale suppliers in the greater Seattle area, the partners formed and incorporated Thrifty Supply Co. of Bellevue, Inc. ("Thrifty Bellevue") in 1967. The Bellevue operation was located approximately 12 miles east of Seattle. If the Bellevue operation proved successful, the partners planned to form a separate operation in Auburn. At this point, the activities previously handled by Thrifty Supply Company, the partnership operating in Seattle, were divided among different entities. In the past the partnership had been handling basic management services (including general accounting functions) for the other entities, while also selling plumbing supplies in the Seattle area and operating as a carrier of goods in interstate commerce. Thrifty Supply Co. of Seattle, Inc. ("Thrifty Seattle") was incorporated in October 1967 to operate the Seattle wholesale outlet, using the partnership warehouse in Seattle. Partnership *342 management functions were transferred to Thrifty Management Corporation ("Thrifty Management"), a newly formed corporation whose stock was held equally by the partners. Thrifty Supply Company, the partnership, continued to operate as a carrier of goods in interstate commerce. On July 8, 1968, Thrifty Supply Co. of Auburn, Inc. ("Thrifty Auburn") was formed and incorporated, and began operating in Auburn, Washington, approximately 20 miles south of Seattle. Shortly after each of the incorporations, the partners as individuals executed documents with the Peoples National Bank of Washington personally guaranteeing amounts borrowed by each entity from the bank. During Thrifty's early years as a partnership the Teamsters Union sought to organize the Thrifty warehousemen. In 1956 the Teamsters picketed the Everett operation because the warehouseman would not join the union. There was no business activity at that location for two weeks. Eventually Herman paid dues for two years for the warehouseman. After that period lapsed the union again attempted to organize the Everett operation, but by 1959 Everett was incorporated and the union was unable to force unionization on the single warehouseman. *343 Attempts to unionize the warehousemen in 1963 and 1964 in Thrifty Seattle and Thrifty Tacoma also proved unsuccessful. Since that time the Thrifty corporations have not had further labor problems. One reason in the partners' minds for incorporating the various entities was that such action would forestall union organization since most of the corporations were fairly small, some employing only a single warehouseman. From the beginning the partnership has provided certain centralized services and management guidance. One of the centralized services the partnership provided prior to 1959 was the maintenance of books and records for the business. With the formation of the corporations, the partnership and then Thrifty Management continued to provide this function, with separate books and records maintained for each corporation. For its management and accounting services Thrifty Management charged the corporations a service fee based on each corporation's sales. While there were management fee agreements, Thrifty Management and the other corporations did not strictly adhere to them. Each Thrifty corporation leased a warehouse and a front office. Herman negotiated the leases for each *344 corporation. Each corporation maintained a separate bank account with the Peoples National Bank of Washington. Each corporation filed a separate corporate income tax return for each of the years in issue. The taxable years for the corporations were as follows: Corporation
Taxable Year Ended
Thrifty Yakima
March 31
Thrifty Auburn
June 30
Thrifty Management
June 30
Thrifty Bellevue
September 30
Thrifty Everett
September 30
Thrifty Spokane
September 30
Thrifty Tacoma
September 30
Thrifty Seattle
October 31
Each corporation had its own manager and staff. The staff generally consisted of a clerical person, a warehouseman and a salesman. The managers were responsible for hiring their respective personnel. Each manager worked in conjunction with Thrifty Management to insure efficient operation of his corporation. From 1968 to 1970 almost all of the sales by the various corporations were credit sales. A manager had authority to extend not to exceed $1,000 credit to a customer. Generally a customer seeking credit filled out a credit application which was forwarded to central accounting for review. The credit manager would confer with the manager *345 of the individual corporation to decide whether credit should be extended. The central credit function helped insure that those unable to pay would be denied credit. While each manager was responsible for pricing merchandise for sale, he used the Moore Pricing Service as a guide. A manager could not sell below the break-even point. Each manager had authority to order merchandise for sale, and each corporation maintained its own inventory. However, if a manager sought to deviate too far from the general product line, he would have to convince Thrifty Management that his suggested purchase was prudent. Approximately 30 percent of the inventory held by each corporation was unique. The uniqueness was due to the different product lines for different markets. For example, Thrifty Tacoma, Thrifty Spokane and Thrifty Yakima carried appliances, while Thrifty Seattle and Thrifty Everett did not. Thrifty Tacoma and Thrifty Yakima did not stock heating goods, while others did. Thrifty Bellevue and Thrifty Auburn carried the same inventory as Thrifty Seattle. When ordering merchandise, the managers of the various corporations submitted their purchase orders to Thrifty Management in Seattle. *346 The Seattle management office consolidated the orders to insure a more favorable bulk purchase price and lower freight rate. Merchandise was generally shipped directly to the corporation that ordered it. If a manager were in immediate need of an item, he might first see whether another Thrifty corporation had it before ordering it from an unrelated party. The buying corporation had to pay cost plus a five percent handling charge for items purchased from another Thrifty corporation. Purchases and sales between Thrifty corporations were rare. Generally each corporation operated solely within its own area. Each entity attempted to maximize profit from local business. When Thrifty Bellevue, Thrifty Seattle and Thrifty Auburn were formed in 1967, salesmen who had previously operated in the entire area covered by these three corporations were permitted to continue to do so if customers demanded their particular assistance. However, movement across corporate market lines became the exception. Such movement was uneconomical and salesmen were generally instructed to confine their activities to defined areas. The Thrifty corporations' taxable incomes for the ten year period 1960 through *347 1970, where available, are as follows: [4]
Thrifty Spokane
Year Ended September 30
Taxable Income
1960
$ 21,058.00
1961
17,691.00
1962
24,708.00
1963
8,780.00
1964
8,709.00
1965
8,124.00
1966
24,009.00
1967
24,711.00
1968
24,430.00
1969
24,625.00
1970
24,847.00
Thrifty Bellevue
1968
3,812.00
1969
15,248.00
1970
(1,031.00)
Thrifty Everett
1960
$ 23,476.00
1961
23,846.00
1962
24,905.00
1963
26,540.00
1964
15,447.00
1965
8,967.00
1966
24,900.00
1967
24,871.00
1968
24,638.00
1969
24,671.00
1970
24,002.00
Thrifty Tacoma
1960
23,575.00
1961
25,484.00
1962
26,381.00
1963
9,760.00
1964
18,045.00
1965
25,373.00
1966
24,880.00
1967
22,676.00
1968
24,041.00
1969
11,019.00
1970
(7,147.00)
Thrifty Seattle
Year Ended October 30
1968
23,934.00
1969
23,934.00
1970
19,029.00
Thrifty Auburn
Year Ended June 30
1969
12,641.00
1970
24,928.00
Thrifty Yakima
Year Ended March 31
1961
Not Available
1962
$ 4,148.00
1963
7,195.00
1964
9,780.00
1965
9,498.00
1966
21,415.00
1967
14,282.00
1968
24,733.00
1969
24,768.00
1970
24,952.00
*348 Herman was aware of the benefit of the corporate surtax exemption, having specifically talked with his accountant about the tax consequences of incorporating the various entities, but the accountant suggested that the tax benefits would be minimal when weighed against such additional operating costs as increased accounting expenses involved in multiple corporations. At all relevant times herein, Herman, Morris and one Leonard Drebin were the officers and directors of each of the corporations. Ownership of the corporations' stock was as follows: Thrifty
Total Outstanding
Shares Owned
Shares Owned Corporation Shares
By Gorlicks
By Others
Everett
2,800
2,799
1
Tacoma
2,100
2,099
1
Spokane
2,600
2,599
1
Yakima
5,000
4,950
50
Seattle
21,000
6,000
15,000 *
Bellevue
1,050
1,050
Auburn
50
49
1
ULTIMATE FINDINGS OF FACT Petitioners were not formed for the principal purpose of avoiding Federal income tax. OPINION Respondent contends that the petitioners, various Thrifty corporations operating in Washington, were incorporated *349 for the principal purpose of avoiding income tax by means of taking advantage of multiple surtax exemptions, and he seeks to disallow those exemptions under section 269. [5] Petitioners allege that avoidance of tax was not the principal purpose for their respective incorporations, but that they were incorporated to separate the business by markets, to achieve limited liability, to avoid unionization, to facilitate the sale of a portion of the business, and to create the means to provide employees with a proprietary interest in the business, as well as to avoid the surtax. It is now well settled that the acquisition of a corporation for purposes of section 269 includes the formation of a new one. *350 Kessmar Construction Co.,39 T.C. 778, 796 (1963), affd. 336 F. 2d 865 (9th Cir. 1964). Determination of the principal purpose for forming the corporations requires a consideration of all the facts and circumstances surrounding the various incorporations. Section 1.269-3(a)(2), Income Tax Regs.; Green Light Company v. United States,405 F. 2d 1068, 1070 (5th Cir. 1968); Bush Hog Manufacturing Co.,42 T.C. 713, 729 (1964). "The burden of proving that tax avoidance was not the principal purpose is on the taxpayer. Theoretically the question of purpose is purely subjective; pragmatically, however, the trier of fact can only determine purpose from objective facts. Thus, unless the taxpayer can muster facts sufficiently plausible to convince the trier of the purity of his motives, the IRS will prevail." [Footnotes omitted.] Bobsee Corp. v. United States,411 F. 2d 231, 238 (5th Cir. 1969). Section 269 applies only if the avoidance of income tax is the principal purpose for forming the corporations. S. Rept. No. 627, 78th Cong., 1st Sess. (1943), *351 1944 C.B. 973, 1017. In order for it to be the principal purpose "it is not necessary that it be the sole motivation, but rather, it is enough if it is found to exceed all others in importance." House Beautiful Homes, Inc. v. Commissioner,405 F. 2d 61, fn. 18 (10th Cir. 1968), affirming a Memorandum Opinion of this Court. Accord, Green Light Company v. United States,405 F. 2d 1068, 1070 (5th Cir. 1968); Hawaiian Trust Co. v. United States,291 F. 2d 761, 765 (9th Cir. 1961). We conclude from our review of the record that the tax benefits from multiple surtax exemptions were, at best, a secondary purpose for forming the various corporations. We have found petitioners' witness credible, and we accept his claim, coupled with supporting documentary evidence, that legitimate business reasons, specifically separating the business by markets, avoiding unionization and limiting liability, were the principal purposes for forming the corporations which were created in 1959 and 1960, and that separating the business by markets was the principal purpose for forming the corporations created in 1967 and 1968. Each of *352 those reasons was more important to the partners than avoiding income tax. [6]
In order to be able to determine accurately the principal purpose, we must analyze the 25 year history of the business. The business began in 1951 as a partnership engaged in wholesaling plumbing supplies. During the latter part of the 1950's the business changed from basically a Seattle area operation with local salesmen and a state-wide mail order business to a direct sales operation throughout the State. The partnership had developed a strategy of expanding its direct sales operation into new geographic areas as a means of meeting the stiff competition in the industry. As of the late 1950's the Seattle operation had branches in Spokane and Everett. In 1959 it purchased an existing business in Tacoma. In 1959 the partners were advised *353 by their attorney to incorporate the various locations to limit their individual liability. The attorney pointed out that as the business expanded the partners' control over business operations decreased, thereby increasing risks. In late 1959, Thrifty Spokane, Thrifty Everett, and Thrifty Tacoma were incorporated. The Seattle office continued to exist as a partnership and, in addition to engaging in sales in that area, continued to perform centralized administrative tasks for the entire business. In March 1960 Thrifty Yakima was incorporated. Apart from the suggestion of their attorney, the partners had other reasons to incorporate the various segments of their business. One was the desire to segregate the business by markets. Each corporation operated in a distinct geographical area and each area generated its own sales proceeds. Distances between locations varied from 30 miles to 275 miles. The partners hoped to operate each area as an independent unit. We view this factor to be a principal business purpose and the real reason that led to the corporate formations. Assuming legitimate business reasons, Congress has recognized the use of separate corporations to conduct the same *354 type of business in different geographical areas. S. Rept. No. 830, 88th Cong., 2nd Sess. (1964), 1964-1 (Pt. 2) C.B. 505, 653-654. The desire to segregate the business by markets was intertwined with the desire for limited liability. Petitioners' attorney had discussed the importance of segregating the locations to insure limited liability. Various business problems had reinforced the importance of his suggestion. Herman and Morris found that it was difficult to recruit trained and efficient personnel to run their businesses and that staff turnover was high. The Spokane manager had proven not to be an efficient administrator. The Everett manager, while capable, had to leave his job because of ill health. Further, in early 1959 the partnership uncovered a theft ring in Seattle where employees had been conspiring with customers to steal supplies. One individual sent to Spokane as a warehouseman was a part of the ring. The theft loss amounted to about $90,000. At least through multiple corporations the financial effect of such problems would be limited. If one corporation suffered a theft loss or a personnel problem which led to a financial setback, that would not directly affect *355 the other corporations. The corporations were formed in 1959 and 1960 also as a means to avoid unionization. [7] Since its early years as a partnership, the business had confronted the Teamsters Union's efforts to organize partnership employees. In 1956 the Everett outlet had had to halt operations for two weeks as the result of union picketing. Herman testified that he felt (rightly or wrongly) that each corporation had to be viewed independently for purposes of organization by the union and by incorporating the various locations it would be more difficult for the union to proceed. The union sought unsuccessfully in 1963 and 1964 to organize ThriftyEverett and ThriftyTacoma. Since that period these two locations and all others have managed to transact business without union interference. Petitioners have convinced us that avoiding unionization was one of the partners' principal purposes for the various incorporations. Respondent takes issue with the reasons that petitioners advanced for forming the corporations in 1959 and 1960. He argues that the petitioners' claim of *356 limited liability for the partners was purely illusory because the partners executed personal guarantees on behalf of each Thrifty corporation to the Peoples National Bank of Washington. The guarantees were not openended but were limited to each corporation's borrowings. The use of multiple corporations still acts as an effective barrier confining creditors and suppliers of one corporation to that corporation's assets for satisfaction of outstanding liabilities. See Lake Textile Co.,28 T.C.M. 246, 250, 38 P-H Memo. T.C. [69,044 (1969). Respondent also claims that the partners, in not demonstrating that they took any steps other than incorporating to avoid unionization, have failed to carry their burden of proof with respect to this reason. While other activity by petitioners to avoid unionization might have strengthened their position, we do not conclude that this reason lacked substance. By 1967 business activity had increased in the immediate Seattle area and competition had moved into adjacent Seattle communities. In order to compete with suppliers in those locations, petitioners needed warehouses in those locations. Herman and Morris decided to operate in *357 those outlying areas which generated sufficient sales on their own as separate corporations. As a result, Thrifty Bellevue was incorporated in 1967, and Thrifty Auburn was incorporated in 1968. Sales by Seattle personnel, except in infrequent situations, were confined to the immediate Seattle market. That operation was incorporated as Thrifty Seattle in 1967, and became solely a wholesale plumbing supply business. Former management and accounting services conducted by the Seattle operation were transferred to Thrifty Management Corporation. Each of the new corporations in what had formerly been the greater Seattle territory generated its sales proceeds from its immediate geographic area. The 1967 and 1968 incorporations were another attempt to divide the business by markets. That division by markets was the principal purpose for the incorporations in 1967 and 1968. Petitioners also claimed that all of the Thrifty corporations were formed so that it would be easier to sell the business at one location and so that employees would have an opportunity to gain a proprietary interest in the business. There is no evidence in the record to support these reasons. *358 In addition to questioning the validity of the reasons petitioners advanced for the corporate formations, respondent argues that the partners were well aware of the surtax exemption benefit, and that their awareness coupled with the fact that the taxable income of each of petitioners hovered around the $25,000 figure is conclusive proof that the multiple corporations were formed for the principal purpose of avoiding tax. While Herman was aware that there would be tax benefits from the use of multiple corporations, he was advised by his accountant that the costs incurred in operating the business in separate corporations would more than offset any tax benefits. Knowledge of existence of potential tax benefits through the use of multiple corporations, without more, is not enough to invoke section 269. Berland's Inc. of South Bend,16 T.C. 182, 188 (1951); Alcorn Wholesale Co.,16 T.C. 75, 89 (1951). Further, a review of the Thrifty corporations' financial data does not support respondent's suggestions that the fact taxable income rarely exceeded $25,000 should be taken as conclusive proof of a principal purpose to avoid tax. Respondent relies upon *359 Atlas Storage Company v. United States,306 F. Supp. 571 (S.D. W. Va. 1969), affd. percuriam437 F. 2d 1319 (4th Cir. 1971), to support his contention. In that case the District Court was persuaded that the manipulation of gross receipts through intercompany transactions caused the limitation on the amount of taxable incomes. That court added that while gross receipts varied from year to year and corporation to corporation, taxable income remained at or near the critical surtax figure of $25,000. In this case there could be little doubt that the close and repeated proximity to $25,000 of the various corporations' taxable incomes bespeaks tax consciousness and acute awareness of the benefits of the surtax exemptions. Having incorporated, care was obviously taken to keep virtually all income out of the higher bracket. Nevertheless, this does not demonstrate that tax savings principally motivated the incorporations. Herman has testified convincingly that other reasons predominated. Moreover, the record reflects that each corporation actively engaged in sales and derived its income from its own geographic market. See *360 Bush Hog Manufacturing Co.,42 T.C. 713 (1964). Thrifty Bellevue, Thrifty Yakima and Thrifty Auburn [8] had taxable incomes well below the $25,000 figure in their early years after incorporation. And respondent points to no specific manipulations used to stay within the $25,000 ceiling for each company. Finally, while not every fact of record favors petitioners, the record does not, as respondent argues, conclusively support his claim that the Thrifty corporations were no more than the division of a single integrated business, segregated to take advantage of the extra surtax exemptions. See S. Rept. No. 2375, 81st Cong., 2d Sess. (1950), 1950-2 C.B. 483, 533-534. [9]Each corporation operated under a different name which identified its geographic location. There were substantial distances in terms of geographic location between most petitioners. Each corporation sold its merchandise within a defined market, and each entity served a different market. Each corporation had its own bank account, its *361 own books and records, and its own employees. The corporations did not all operate on the same fiscal year. Each corporation filed separate corporate income tax returns. Each corporate manager had control over hiring and firing. While there was central management guidance and central accounting performed by the Seattle operation, originally as a partnership and then as Thrifty Management Corporation, the managers still had some control over selecting and ordering inventory and extending credit. Each corporate manager also had control within certain guidelines to set prices for merchandise. Approximately 30 percent of the inventory from corporation to corporation was not interchangeable. Certain corporations would carry lines of merchandise others would not. Each corporation was actively engaged in the wholesaling of plumbing supplies. The facts that there were centralized management assistance and certain centralized services does not detract from the independent existence of each corporation, and does not by itself imply that the business *362 was an integrated organization separated solely to take advantage of multiple surtax exemptions. See V. H. Monette & Co.,45 T.C. 15 (1965), affd. percuriam374 F. 2d 116 (4th Cir. 1967); Yong Auto Parts,27 T.C.M. 778, 37 P-H Memo. T.C. [*] 68,160 (1968). As stated in our ultimate findings of fact, we have concluded from a review of the record as a whole that petitioners herein were not formed for the principal purpose of avoidance of income tax. Decisions will be entered for petitioners.
Footnotes
1. The following cases are consolidated herewith: ↩
Thrifty Supply Co. of Bellevue, Inc.
Docket No. 6593-73;
Thrifty Supply Co. of Everett, Inc.
Docket No. 6594-73;
Thrifty Supply Co. of Seattle, Inc.
Docket No. 6595-73;
Thrifty Supply Co. of Tacoma, Inc.
Docket No. 6596-73;
Thrifty Supply Co. of Auburn, Inc.
Docket No. 6597-73;
Thrifty Supply Co. of Yakima, Inc.
Docket No. 6598-73.
2. All section references are to the Internal Revenue Code of 1954, as in effect for the years in issue.↩
3. Herman and his brother, Morris, spell their last names differently.↩
4. All corporations had income from interest and rent in addition to their sales proceeds. The record does not indicate the sources of interest and rental income.↩
*. 6,000 shares of Seattle were owned by Tacoma, 6,000 by Everett and 3,000 by Spokane.↩
5. Section 269(a) provides in pertinent part: * * *.--If-- (1) any person or persons acquire, * * * directly or indirectly, control of a corporation, * * *
and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit or other allowance which such person or corporation would not otherwise enjoy, then the secretary or his delegate may disallow such deduction, credit, or other allowance.↩
6. "The crucial question is not whether the reasons advanced by the witnesses are so weighty as to have required the petitioners' formation; rather the question is whether those were the real reasons that caused * * * [the partners] to form the petitioners." Lake Textile Co.,28 T.C.M. 246↩, 251, 38 P-H Memo. T.C. [*] 69,044, at p. 69-267 (1969).
7. See Pre-Mixed Concrete, Inc.,21 T.C.M. 1601↩, 31 P-H Memo. T.C. [*] 62,301 (1962).
8. ThriftyAuburn did generate $24,900 of taxable income in its taxable year ended June 30, 1970. Approximately $5,000 of that amount was interest income.↩
9. Respondent has not alleged that the corporations were shams or mere dummies. Each corporation engaged in significant business activity.↩